**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

SYSTEM4, LLC,

                Petitioner,

v.

LUIS RIBEIRO,

                Respondent.

Civ. No. 1:17-cv-10455

**MEMORANDUM OF LAW OF SYSTEM4, LLC IN SUPPORT OF ITS
APPLICATION TO VACATE ARBITRATION AWARD**

In her August 23, 2016 Memorandum of Decision on Cross Motions for Summary Judgment on Liability (the "Decision"), Attorney Jessica Block, the American Arbitration Association's ("AAA") designated arbitrator in the matter of Ribeiro v. System4, LLC (AAA No. 01-15-0003-8637), (the "Arbitrator"), promised to "make an independent judgment based on the facts and guided by the existing decisional law in this jurisdiction." See Appl., Ex. 4, Mem. of Decision on Cross Mots. for Summ. J. on Liability (Aug. 23, 2016), pg. 23. From the very outset of those arbitration proceedings, System4, LLC justifiably expected that such a noble objective would be met. However, the Arbitrator, regretfully, did exactly the opposite. She repeatedly displayed "evident partiality", and she "exceeded [her] powers" in each and every major decision that she issued in the case.

The arbitration proceedings involved few contested facts and the basis for System4, LLC's Application to Vacate Arbitration Award (the "Application") does not involve any alleged error over any material fact that may have been contested. Rather, System4, LLC's Application is grounded in

the Arbitrator's failure to follow that "existing decisional law", and the distorted and unsupported application of existing statutory law, most especially the statute of limitations for a wage claim under Massachusetts law.

As they unfolded, the arbitration proceedings emerged as a "2 on 1" battle, pitting the Arbitrator and Mr. Ribeiro's counsel against counsel for System4, LLC.  The Arbitrator, effectively serving as co-counsel to Mr. Ribeiro, bent over backwards to invent new and wholly unsupported theories of law that, in many instances, even Mr. Ribeiro's actual counsel did not advance.  These theories of law were simply conjured up by the Arbitrator in order to give Mr. Ribeiro the "win" on each and every substantive decision that she issued during the arbitration proceeding.

In fact, the Arbitrator completely disregarded decisions by the Massachusetts Supreme Judicial Court and by this Honorable Court that squarely dealt with key issues in dispute.  For instance, from the very beginning, the Arbitrator prejudged the case, and System4, LLC made this fact be known, by ruling that System4, LLC would shoulder the entire cost of the arbitration (see Appl., Ex. 3, Mem. of Decision on Arbitration Costs (Oct. 7, 2015)) even though the Massachusetts Supreme Judicial Court ruled in a related case that the pertinent franchise agreement's cost-splitting requirement, as found within the AAA's Commercial Arbitration Rules, was both conscionable and enforceable.  See Ex. 1, Machado v. System4 LLC, 471 Mass. 204, 218-19 (2015) (hereinafter, "Machado II").[1]  To this Arbitrator, the Supreme Judicial Court's decision was merely an inconvenient obstacle that she needed to get around.  She did so by asserting, without any evidence in the record, before any discovery had been conducted and before any of the issues were joined, that

---

[1]  When reference is made to an Exhibit attached to System4, LLC's Application, the reference is preceded by the abbreviation "Appl.".  All other Exhibits accompany this Memorandum of Law.

Mr. Ribeiro was likely to prevail in the arbitration even though the District of Massachusetts had decided in 2014 that a franchisor, like System4, LLC, that sat atop a three-tier franchise system was not liable for the misclassification of unit franchisees.  See Ex. 2, Depianti v. Jan-Pro Franchising Int'l, 39 F. Supp. 3d 112, 126-29 (D. Mass. 2014) (Wolf, J.).  She was also willing to hang her hat on a "bare bones" affidavit concerning the Respondent's financial condition, without in any way taking into account his counsel's public statements that they routinely advance costs for their contingent fee clients.

The Arbitrator's "evident partiality", coupled with how she "exceeded [her] powers", provides this Court with good reason to vacate the final arbitration award and related findings and ruling, as requested in System4, LLC's Application.  Justice demands nothing less.

## FACTUAL BACKGROUND[2]

System4, LLC was founded in 2004 by Mr. Phillip Kubec and Mr. Edward Hammer.  See Appl., ¶ 5.  From inception to roughly mid-2012, System4, LLC's usual course of business consisted of licensing a trademark and developing a business model founded on a franchise system. See Appl., ¶ 6.

System4, LLC, as part of its franchise business model, sold territories to master franchisees. See Appl., ¶ 7.  Master franchisees then sold unit franchises and secured customer accounts for cleaning services.   See id.   In sum, the three-tier franchise system model had System4, LLC licensing the business model that it created and the trademark that it established to independently owned and operated master franchisees.  See Appl., ¶ 8.  Master franchisees subsequently marketed

---

[2]  The "Factual Background" is largely based on the factual allegations contained in System4, LLC's Application.

the model, trademark, and cleaning accounts that they secured on their own to independently owned and operated unit franchisees.  See id.

In March 2008, System4, LLC entered into a master franchise agreement with NECCS, Inc. See Appl., ¶ 9.  Under the System4, LLC – NECCS, Inc. master franchise agreement, NECCS, Inc. was the master franchisee in the "Eastern Massachusetts" territory.  See id.

System4, LLC and NECCS, Inc. are separate and independently owned entities that have an arms-length legal, contractual relationship.  See Appl., ¶ 10.  NECCS, Inc., as the master franchisee in the "Eastern Massachusetts" territory, secured customer accounts that were serviced by unit franchisees.  See Appl., ¶ 11.  NECCS, Inc. was responsible for issuing invoices to the accounts, as well as for remitting payment to the unit franchisees in accordance with the terms of unit franchise agreements.  See id.

On or about August 3, 2011, Mr. Ribeiro executed a unit franchise agreement with NECCS, Inc. for the operation of a commercial cleaning franchise.  See Appl., ¶ 12, Ex. 1.  System4, LLC is not a signatory to the unit franchise agreement between Mr. Ribeiro and NECCS, Inc.  See Appl., ¶ 13.

Under the unit franchise agreement that was executed between Mr. Ribeiro and NECCS, Inc., Mr. Ribeiro operated and grew an independent cleaning business.  See Appl., ¶ 14.  The agreement allowed Mr. Ribeiro to expand his business operation by performing cleaning services for customers or clients not obtained from NECCS, Inc.  See id.

Mr. Ribeiro acknowledges abandoning his unit franchise with NECCS, Inc. in early April 2012.  See Appl., ¶ 15.  Contemporaneous worksheets prepared and kept by NECCS, Inc. staff

indicate that Mr. Ribeiro last serviced certain clients or customers that he obtained from NECCS, Inc. on April 5, 2012.  See id.

On June 12, 2015, more than three years after abandoning his unit franchise, Mr. Ribeiro filed a Demand for Arbitration against System4, LLC with the AAA.  See Appl., ¶ 16, Ex. 2. Through his Demand for Arbitration, Mr. Ribeiro brought claims against System4, LLC for: (1) violation of the Massachusetts Independent Contractor statute; (2) intentional or negligent misrepresentations; and (3) contravention of M.G.L. c. 93A.  See Appl., ¶ 17. NECCS, Inc. was not named as a respondent in Mr. Ribeiro's Demand for Arbitration.  See Appl., ¶ 18.

The AAA took jurisdiction of the matter pursuant to Paragraph 19(B) of Mr. Ribeiro's unit franchise agreement.  See Appl., ¶ 19.  Paragraph 19(B) of the agreement reads, in pertinent part, as follows:

> B.     Arbitration.     Except for controversies, disputes or claims related to or based on: (1) any action by Master Franchisee to stop or prevent any threat or danger to public health or safety in connection with the operation of the Franchised Business; or (2) Franchisee's (including any of Franchisee's owners and principals) use of any Mark, all controversies, disputes or claims between Master Franchisee (including its subsidiaries, affiliated, shareholders, officers, directors, managers, representatives and employees) and Franchisee (including its owners, principals and guarantors, if applicable) arising out of or related to:
>
> > (1) This Agreement or any other agreement between them or any provision of any agreement between them or the validity of any such agreement or provision;
> > (2) Master Franchisee's relationship with Franchisee; or
> > (3) Any standard, specification, or operating procedure relating to the establishment or operation of the Franchised Business;

> will be submitted to and for binding arbitration in front of a single arbitrator of the American Arbitration Association (or any other alternative dispute resolution organization acceptable to the parties) conducted in accordance with its then current franchising arbitration rules, if any, otherwise its then current commercial arbitration rules, at its office located in the state of Massachusetts, on the demand of either party.  All matters relating to arbitration will be governed by the Federal Arbitration Act (9 U.S.C. §§ 1 et. seq.) and not by any state arbitration law.

See id.  Paragraph 19(B) of Mr. Ribeiro's unit franchise agreement also reads, in pertinent part, that "[t]he arbitrator will not have the authority or right to add to, delete, amend or modify the terms, conditions or provisions of this section."  See Appl., ¶ 20.

As part of taking jurisdiction over Mr. Ribeiro's Demand for Arbitration, the AAA appointed as arbitrator Attorney Jessica Block.  See Appl., ¶ 21.  Unbeknownst to System4, LLC at the time of the appointment, the Arbitrator would be partial toward Mr. Ribeiro throughout the entirety of the arbitration proceedings.  See Appl., ¶ 22.  She would also exceed her powers by virtue of: (a) refusing to adhere to the clear and unambiguous terms of the franchise agreement; and (b) "manifestly disregarding" applicable statutory and common law in each and every one of her major decisions in the case.  See id.

The following decisions are at issue in System4, LLC's Application to Vacate:

- "Memorandum of Decision on Arbitration Costs" (Oct. 7, 2015) (Appl., Ex. 3);

- "Memorandum of Decision on Cross Motions for Summary Judgment on Liability" (Aug. 23, 2016) (Appl., Ex. 4);

- "Order on System4 LLC's Request to File a Motion for Reconsideration" (Oct. 19, 2016) (Appl., Ex. 5);

- "Order on System4 LLC's Request for Sanctions" (Oct. 27, 2016) (Appl., Ex. 6);

- "Order on System4 LLC's Motion for Leave to File Petition for Attorneys' Fees and Costs" (Nov. 28, 2016) (Appl., Ex. 7);

- "Order on System4 LLC's Request for a New or Amended Order on Sanctions" (Dec. 21, 2016) (Appl., Ex. 8); and

- "Ruling on Claimant's Petition for Attorneys' Fees and Costs and Final Award" (Feb. 16, 2017) (Appl., Ex. 9).

Evidence of the Arbitrator's bias, as well as evidence that the Arbitrator "exceeded [her] powers", is apparent in each and every one of these decisions. See Appl., ¶¶ 22-26.

The delivery of the final arbitration award, as done via e-mail on February 17, 2017, has enabled System4, LLC to file this action. See Appl., ¶ 27.

## ARGUMENT

The instant action is one of those select cases where the Arbitrator's final arbitration award and related findings and rulings cannot be allowed to stand. As the First Circuit Court of Appeals explained, in pertinent part, roughly two (2) years ago in Raymond James Fin. Servs., Inc. v. Fenyk:

> [A]n arbitration ruling ordinarily is unenforceable only if it imposes the arbitrators' "own view of sound policy" instead of adhering to the agreement that governs the parties' relationship. [Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 672, 130 S. Ct. 1758]; id. at 671, 130 S. Ct. 1758 (noting that arbitration rulings are vulnerable when the arbitrator "strays from interpretation and application of the agreement and effectively dispense[s] his own brand of industrial justice" (alteration in original) (quoting Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509, 121 S. Ct. 1724, 149 L. Ed. 2d 740 (2001) (per curiam) (internal quotation marks omitted)); see also Oxford Health Plans LLC v. Sutter, — U.S. —, 133 S. Ct. 2064, 2068, 186 L. Ed. 2d 113 (2013) (stating that "courts may vacate an arbitrator's decision 'only in very unusual circumstances'" (quoting First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 942, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995))).

7

780 F.3d 59, 64 (2015).  While "[j]udicial review of an arbitration decision is extremely narrow and exceedingly deferential", see Rogers v. Ausdal Fin. Partners, Inc., 168 F. Supp. 3d 378, 385 (D. Mass. 2016) (Saylor, J.) (internal quotation marks and citations omitted), vacatur is wholly appropriate here.

Pursuant to Paragraph 19(B) of the unit franchise agreement in question, "[a]ll matters relating to arbitration will be governed by the Federal Arbitration Act (9 U.S.C. §§ 1 et. seq.) and not by any state arbitration law."  See Appl., Ex. 1, Unit Franchise Agreement between NECCS, Inc. and Mr. Ribeiro (d/b/a Five Star Cleaning) (August 3, 2011).  System4, LLC, in light of this express contractual provision, looks to the specific grounds found in the Federal Arbitration Act ("FAA") for overturning the Arbitrator's final arbitration award and related findings and rulings.  Those grounds are found at Section 10 of the FAA, 9 U.S.C. § 10.  And in this case, the second and fourth grounds of Section 10, as described below, strongly support vacatur.

THIS COURT SHOULD VACATE THE FINAL ARBITRATION AWARD AND RELATED FINDINGS AND RULINGS BECAUSE THEY WERE MADE BY AN ARBITRATOR WITH "EVIDENT PARTIALITY" TOWARD MR. RIBEIRO

Under Section 10(a)(2) of the FAA, 9 U.S.C. § 10(a)(2):

> [T]he United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration – (2) where there was evident partiality or corruption in the arbitrators, or either of them[.]

The Arbitrator's "partiality" toward Mr. Ribeiro during the arbitration proceedings is without question.

System4, LLC's burden with respect to proving "evident partiality", as explained by the District of Massachusetts, is as follows:

> Evident partiality requires more than just an appearance of bias; there must be some actual evidence of bias. <u>See</u> <u>Nationwide Mut. Ins. Co. v. Home Ins. Co.</u>, 278 F.3d 621, 626 (6th Cir. 2002) ("The alleged partiality must be direct, definite, and capable of demonstration, and the party asserting evident partiality must establish specific facts that indicate improper motives on the part of the arbitrator."); <u>Gianelli Money Purchase Plan and Trust v. ADM Investor Servs., Inc.</u>, 146 F.3d 1309, 1312 (11th Cir. 1998) ("The alleged partiality must be direct, definite and capable of demonstration rather than remote, uncertain and speculative."); <u>Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.</u>, 991 F.2d 141, 146 (4th Cir. 1993) (same); <u>Employers Ins. Of Wausau v. Nat'l Union Fire Ins. Co. of Pittsburgh</u>, 933 F.2d 1481, 1489 (9th Cir. 1991) (a party "must demonstrate more than a mere appearance of bias to disqualify an arbitrator").

<u>Nationwide Mut. Ins. Co. v. First State Ins. Co.</u>, 213 F. Supp. 2d 10, 17 (D. Mass. 2002) (O'Toole, J.).  To sustain its burden, System4, LLC directs this Court to its analysis of the Arbitrator's Memorandum of Decision on Arbitration Costs, as found on pages 2 and 3 of this Memorandum. System4, LLC also directs this Court to the briefs filed on summary judgment, which are attached hereto as Exhibits.  In particular:

- System4, LLC filed the following "briefs" on summary judgment:

     (A) System4, LLC's Memorandum of Law in Support of Its Motion for Summary Judgment (attached hereto as <u>Ex. 3</u>);

     (B) System4, LLC's Opposition to Claimant's Motion for Summary Judgment on Liability (attached hereto as <u>Ex. 4</u>); and

     (C) System4, LLC's Supplemental Brief in Support of Its Motion for Summary Judgment (attached hereto as <u>Ex. 5</u>).

- Mr. Ribeiro filed the following "briefs" on summary judgment:

     (A) Claimant's Motion for Summary Judgment on Liability (attached hereto, without accompanying materials, as <u>Ex. 6</u>);

(B) Claimant's Response to System4's Motion for Summary Judgment (attached hereto, without accompanying materials, as Ex. 7);

(C) Claimant's Supplement in Support of Motion for Summary Judgment on Liability (attached hereto, without accompanying materials, as Ex. 8); and

(D) Claimant's Response to System4, LLC's Supplemental Brief in Support of Its Motion for Summary Judgment (attached hereto as Ex. 9).

A close reading of the briefs, when read in light of the August 23, 2016 Memorandum of Decision on Cross Motions for Summary Judgment on Liability (Appl., Ex. 4) (the "Decision") and the February 16, 2017 Ruling on Claimant's Petition for Attorneys' Fees and Costs and Final Award" (Appl., Ex. 9), evidence the Arbitrator's partiality toward Mr. Ribeiro.

For instance, in both its first and third brief, System4, LLC provided the Arbitrator with a timeline of relevant events. See Ex. 3, System4, LLC's Memorandum of Law in Support of Its Motion for Summary Judgment, pgs. 4-5; see also Ex. 5, System4, LLC's Supplemental Brief in Support of Its Motion for Summary Judgment, pgs. 2-4. The accuracy of the timeline was never contested by Mr. Ribeiro. Nevertheless, the Arbitrator, in an act of partiality, proceeded to amend the timeline based on her own independent research. See Appl., Ex. 4, Decision, pgs. 9-12. She retrieved and reviewed the Norfolk Superior Court docket in Machado  v. System4 LLC, an unrelated matter involving System4, LLC and certain unit franchisees, even though neither Mr. Ribeiro's attorneys nor System4, LLC's counsel provided it to her for review. See id., pg. 9, n.3. Her independent investigation, which she performed when she perceived it to be in the interest of Mr. Ribeiro, makes her a biased finder of fact and law. And as discussed below, this point is

10

accentuated when taking into account that the Arbitrator did not perform a similar "independent investigation" when it would have been in the <u>actual</u> <u>interest</u> of System4, LLC.

The Arbitrator's legal advocacy on behalf of Mr. Ribeiro did not stop there.  In all three of its briefs, System4, LLC advanced a statute of limitations defense that posited, in part, that even if Mr. Ribeiro was erroneously found to be a member of putative class in the <u>Machado</u> litigation, he was on notice as of the Supreme Judicial Court's 2013 decision in <u>Machado v. System4 LLC</u>, 465 Mass. 508, 512-17 (2013) (hereinafter, "<u>Machado I</u>") (<u>see</u> <u>Ex. 10</u>) that he needed to file an individual arbitration against System4, LLC, and that under the contractually-shortened statute of limitations of one (1) year, which was found enforceable in <u>Machado II</u>, Mr. Ribeiro's Demand for Arbitration was out of time.  <u>See</u> <u>generally</u> <u>Ex. 3</u>, System4, LLC's Memorandum of Law in Support of Its Motion for Summary Judgment, pgs. 7-10, 12; <u>Ex. 4</u>, System4, LLC's Opposition to Claimant's Motion for Summary Judgment on Liability, pgs. 7-9; <u>Ex. 5</u>, System4, LLC's Supplemental Brief in Support of Its Motion for Summary Judgment, pgs. 9-12.  Mr. Ribeiro did not respond to this defense in any one of his submissions, and for good reason – because the defense was, and continues to be, a winner.  Nevertheless, the Arbitrator, in another act of partiality, refused to adopt the defense by virtue of self-invented, unsubstantiated "law" that is in "manifest disregard" of settled precedent on the statute of limitations.  <u>See</u> Appl., <u>Ex. 4</u>, Decision, pgs. 16-17.  The Arbitrator's flawed legal reasoning, which was not even put forward by Mr. Ribeiro, was adopted by the Arbitrator in "excess of [her] powers".  This issue is further discussed in the next section.

System4, LLC, in light of the Arbitrator's legal advocacy on behalf of Mr. Ribeiro, requested the opportunity to file a motion for reconsideration.  That request, upon review by the Arbitrator, was

denied.  See Appl., Ex. 5, Order on System4 LLC's Request to File a Motion for Reconsideration (Oct. 19, 2016).

To add insult to injury, the Arbitrator was not willing to perform her own independent inquiry, as she did for Mr. Ribeiro, with regard to one of System4, LLC's arguments concerning Claimant's Petition for Attorneys' Fees and Costs.  In particular, System4, LLC argued, in sum and substance, that the award of attorneys' fees and costs in this case should be reduced because the Ribeiro matter was a misclassification case no different from Depianti, and that Mr. Riberio's lead attorney, who was also lead counsel in the Depianti matter, basically took a "cookie-cutter" approach with the briefs that were submitted.  The Arbitrator refused to adopt this argument on account of System4, LLC not submitting the Depianti briefs.  See Appl., Ex. 9, Ruling on Claimant's Petition for Attorneys' Fees and Costs and Final Award (Feb. 16, 2017), pgs. 10-11.

In light of the above, it is beyond dispute that the Arbitrator unfairly favored Mr. Ribeiro.  Her "evident partiality", without more, makes the final arbitration award and related findings and rulings flawed.  For justice to prevail, they must not stand.  The Court should vacate each and every award, finding, and ruling that is listed in System4, LLC's Application.

THIS COURT SHOULD VACATE THE FINAL ARBITRATION AWARD AND RELATED FINDINGS AND RULINGS BECAUSE THEY WERE MADE BY AN ARBITRATOR WHO FAR "EXCEEDED [HER] POWERS"

The evident partiality of the Arbitrator also expresses itself in the many ways in which she far "exceeded [her] powers" throughout the course of the arbitration proceedings.  Indeed, the fact that the Arbitrator "exceeded [her] powers" is, in and of itself and without more, a ground on which this Court may vacate the final arbitration award and related findings and rulings.  According to Section 10(a)(4) of the FAA, 9 U.S.C. § 10(a)(4):

> [T]he United States court in and for the district wherein the award
> was made may make an order vacating the award upon the application
> of any party to the arbitration – (4) where the arbitrators exceeded
> their powers, or so imperfectly executed them that a mutual, final, and
> definite award upon the subject matter submitted was not made.

This ground is applicable here.

As explained below, the Arbitrator "exceeded [her] powers" in two ways: (1) she refused to

adhere to the clear and unambiguous terms of the franchise agreement; and (2) she "manifestly

disregarded" applicable statutory and common law in each and every one of her major decisions in

the case.  These two issues are dealt with separately.

I.    The Arbitrator Refused to Adhere to the Clear and Unambiguous Terms of the
      Franchise Agreement

Arbitration, by its very nature, is a creature of contract.  As the District of Massachusetts

recently explained in Rogers:

> The primary purpose of the Federal Arbitration Act is to "ensure that
> 'private agreements to arbitrate are enforced according to their
> terms.'" Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S.
> 662, 682, 130 S. Ct. 1758, 176 L. Ed. 2d 605 (2010) (quoting Volt
> Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior
> Univ., 489 U.S. 468, 479, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989)).
> When enforcing an agreement to arbitrate a dispute, arbitrators must
> "give effect to the contractual rights and expectations of the parties."
> Id.  Indeed, "arbitrators derive their authority to resolve disputes only
> because the parties have agreed in advance to submit such grievances
> to arbitration." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth,
> Inc., 473 U.S. 614, 628, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985).
> Parties are generally allowed to structure arbitration agreements as
> they desire.  Id.; see also Mastrobuono v. Shearson Lehman Hutton,
> Inc., 514 U.S. 52, 57, 115 S. Ct. 1212, 131 L. Ed. 2d 76 (1995).

780 F.3d at 64.  This expression of the long-standing interpretation of the FAA, issued before

almost all of the substantive decisions in the arbitration proceeding, made absolutely no impression

on the Arbitrator.

Paragraph 19(B) of Mr. Ribeiro's unit franchise agreement unambiguously provides that "[t]he arbitrator will not have the authority or right to add to, delete, amend or modify the terms, conditions or provisions of this section."   See Appl., ¶ 20; see also Appl., Ex. 1, Unit Franchise Agreement between NECCS, Inc. and Mr. Ribeiro (d/b/a Five Star Cleaning) (August 3, 2011). Nevertheless, the Arbitrator did what she was expressly prohibited from doing.   To be more specific:

- As explained on pages 2 and 3 of this Memorandum, and as also highlighted in the "evident partiality" section, the unit franchise agreement, by expressly providing for the use of the AAA's Commercial Arbitration Rules in Paragraph 19(B), required the parties to split the cost of any arbitration.  See Appl., Ex. 1, Unit Franchise Agreement between NECCS, Inc. and Mr. Ribeiro (d/b/a Five Star Cleaning) (August 3, 2011).   However, the Arbitrator, from the very outset of this case, refused to enforce the Commercial Arbitration Rules and the pertinent fee-splitting provision (see Appl., Ex. 3, Mem. of Decision on Arbitration Costs (Oct. 7, 2015)) even though the Massachusetts Supreme Judicial Court had found such fee-splitting to be conscionable and enforceable in Machado II.  See Ex. 1, 471 Mass. at 218-19.   In her Memorandum of Decision on Arbitration Costs, in which she decided to conduct the arbitration proceedings under the AAA's Employment Arbitration Rules, the Arbitrator rested, in part, on a brief and vague affidavit from Mr. Ribeiro that does little, if anything, to establish his financial condition.   In fact, the affidavit is silent on whether his attorneys have the ability and/or obligation to advance his arbitration costs.  See Ex. 11, Affidavit of Luis Ribeiro (Sept. 2, 2015); see also Ex. 12, Letter Brief of System4, LLC (Sept. 25, 2015).   Moreover, as part of the decision, the Arbitrator prejudged the case, finding, without any evidence in the record, that Mr. Ribeiro would prevail.   On account of this decision, System4, LLC was forever foreclosed from recovering arbitration costs if it prevailed at the conclusion of the proceedings.

- Paragraph 19(B) of the unit franchise agreement contains a confidentiality provision which reads as follows: "No findings, conclusions, orders or awards emanating from any arbitration proceeding conducted hereunder may be introduced, referred to or used in any subsequent or other proceeding as a precedent, to collaterally estop any party from advancing any claim or

defense or from raising any like or similar issues, <u>or from any other purpose whatsoever</u>." <u>See</u> Appl., <u>Ex. 1</u>, Unit Franchise Agreement between NECCS, Inc. and Mr. Ribeiro (d/b/a Five Star Cleaning) (August 3, 2011) (emphasis added).  The Supreme Judicial Court, as part of <u>Machado II</u>, heard argument with respect to this provision and refused to find it unenforceable.  <u>See</u> <u>Ex. 1</u>, <u>Machado II</u>, 471 Mass. at 219-20.  Nevertheless, the Arbitrator, in excess of her powers, refused to enforce the provision.  <u>See</u> Appl., <u>Ex. 6</u>, Order on System4 LLC's Request for Sanctions (Oct. 27, 2016); <u>see also</u> Appl., <u>Ex. 8</u>, Order on System4 LLC's Request for a New or Amended Order on Sanctions (Dec. 21, 2016).

- Paragraph 19(C) of the unit franchise agreement reads, in pertinent part, as follows: "[S]hould either Party incur attorneys' fees in order to enforce the terms and conditions of this Agreement, the Party not in default shall be entitled to reimbursement of such attorneys' fees and costs, in addition to any other remedies either Party may have at law or in equity." <u>See</u> Appl., <u>Ex. 1</u>, Unit Franchise Agreement between NECCS, Inc. and Mr. Ribeiro (d/b/a Five Star Cleaning) (August 3, 2011)  Given the Arbitrator's finding that Mr. Ribeiro was a putative member of the <u>Machado</u> class, System4, LLC requested, in accordance with the aforementioned provision, that he pay his fair share of the earlier litigation expense.  The Arbitrator refused to enforce this contractual provision.  <u>See</u> Appl., <u>Ex. 7</u>, Order on System4 LLC's Motion for Leave to File Petition for Attorneys' Fees and Costs" (Nov. 28, 2016).

In sum, the Arbitrator disregarded the terms of the arbitration agreement in favor of how she wanted to proceed.  That, simply put, is unfair.

These examples, without more, establish that the Arbitrator far "exceeded [her] powers" during the course of the arbitration proceeding.  The Court should provide System4, LLC with the relief that it appropriately deserves.

II.    <u>The Arbitrator "Manifestly Disregarded" Applicable Law in Each and Every One of Her Major Decisions</u>

Importantly, there is even more reason for this Court to find that the Arbitrator far "exceeded [her] powers" during the course of the arbitration proceeding.  A review of the

15

Arbitrator's major decisions in this case evidences that time and time again, she "manifestly disregarded" applicable law.

While the First Circuit Court of Appeals indicated in its 2015 Raymond James decision (see 780 F.3d at 64-65) that it has yet to determine whether the "manifest disregard" doctrine is still good law after the Supreme Court's ruling in Hall Street Assocs., LLC v. Mattel, Inc., 552 U.S. 576, 584, 128 S. Ct. 1396, 170 L. Ed. 2d 254 (2008), other prominent circuits, such as the Second, Fourth, Seventh, Ninth, and Tenth, have all found the doctrine to still be valid.  See, e.g., A & G Coal Corp. v. Integrity Coal Sales, Inc., 565 F. App'x 41, 42-43 (2nd Cir. 2014); Dewan v. Walia, 544 F. App'x 240, 245-46 (4th Cir. 2013); Renard v. Ameriprise Fin. Servs., Inc., 778 F.3d 563, 567 (7th Cir. 2015); Wetzel's Pretzels, LLC v. Johnson, 567 F. App'x 493, 494 (9th Cir. 2014); Adviser Dealer Servs., Inc. v. Icon Advisers, Inc., 557 F. App'x 714, 717 (10th Cir. 2014).[3]  Indeed, in the Second Circuit Court of Appeals' recent decision in Sutherland Global Servs. v. Adam Technologies, 639 F. App'x 697 (2d Cir. 2016), the Second Circuit reaffirmed that the "manifest disregard" doctrine was legitimate "judicial gloss" on the FAA – Section 10 grounds for vacatur, such as the "exceed[ing] power" ground found at § 10(a)(4).

The standard for the application of the manifest disregard of the law doctrine is summarized by the Second Circuit Court of Appeals as follows:

> A party seeking vacatur for manifest disregard of the law must show not only that "the governing law alleged to have been ignored by the arbitrators was well defined, explicit, and clearly applicable," but also that "the arbitrator knew about the existence of a clearly governing legal principle but decided to ignore it or pay no attention to it." Jock

---

[3] By comparison, the Fifth, Eighth, and Eleventh Circuits have found the "manifest disregard" doctrine to be dead. See, e.g., McVay v. Halliburton Energy Servs., Inc., 608 F. App'x 222, 225 (5th Cir. 2015); Med. Shoppe Int'l, Inc. v. Turner Invs., Inc., 614 F.3d 485, 489 (8th Cir. 2010); Campbell's Foliage, Inc. v. Fed. Crop Ins. Corp., 562 F. App'x 828, 831 (11th Cir. 2014).

v. Sterling Jewelers Inc., 646 F.3d 113, 121 n.1 (2d Cir. 2011) (internal quotation marks omitted); see Westerbeke Corp. v. Daihatsu Motor Co., 304 F.3d 200, 208 (2d Cir.2002) (Sotomayor, J.) (stating that vacatur requires "something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand or apply the law" (internal quotation marks omitted)). An arbitration award may also be vacated if it is "in manifest disregard of the terms of the parties' relevant agreement." Schwartz v. Merrill Lynch & Co., 665 F.3d at 452 (internal quotation marks and alteration omitted).  In such cases, however, "interpretation of the contract terms is within the province of the arbitrator and will not be overruled simply because we disagree with that interpretation"; rather, "[i]f the arbitrator has provided even a barely colorable justification for his or her interpretation of the contract, the award must stand." Id. (internal quotation marks and alterations omitted).

A & G Coal Corp., 565 F. App'x at 42.  And as detailed below, System4, LLC's easily sustains its burden by virtue of the multiple instances in which the Arbitrator blatantly disregarded applicable law.

> A.   The Arbitrator "Manifestly Disregarded" Applicable Law When Addressing System4, LLC's Statute of Limitations Argument that Mr. Ribeiro Was Never a Putative Member of the *Machado* Class, and that He Had Until April 2013 to File a Demand for Arbitration Against System4, LLC

Mr. Ribeiro, as the Claimant in the arbitration proceeding, bears the burden of establishing that he filed his Demand for Arbitration within the contractually-shortened statute of limitations of one (1) year.  See Riley v. Presnell, 409 Mass. 239, 243-44 (1991).  Rather than hold Mr. Ribeiro to his burden, the August 23, 2016 Memorandum of Decision on Cross Motions for Summary Judgment on Liability (Appl., Ex. 4) (the "Decision") fails to do justice.  It rejects, in deficient form, the argument that Mr. Ribeiro was never a putative member of the Machado class, and that the class action tolling exception does not, by extension, apply to him.

As a preliminary matter, it is important to recognize that Mr. Ribeiro was not named as a plaintiff in the June 6, 2011 First Amended Class Action Complaint.  <u>See</u> <u>Ex. 13</u>, First Amended Class Action Complaint.  It is also important to recognize that the First Amended Complaint defines the putative class to include "all other individuals who <u>have purchased</u> so-called "cleaning franchises" from System 4 in Massachusetts <u>and</u> who <u>have performed</u> cleaning services for System 4 in Massachusetts <u>and have been subjected</u> to the legal violations described in this complaint."  <u>See</u> <u>id.</u> (emphasis added).  Mr. Ribeiro did not meet these requirements.  He only purchased his unit franchise in August 2011.

System4, LLC appreciates that the Decision cites to <u>Mullally v. Waste Mgmt. of Mass., Inc.</u>, an unpublished Superior Court decision, to explain that a primary objective of the "putative class definition is to give defendants sufficient notice of impending class claims."  <u>See</u> Appl., <u>Ex. 4</u>, Decision, pg. 14 (citing, in part, No. Civ. A. 06-882, 2009 WL 1453529, at *3 (Super. Ct. May 18, 2009).  However, the <u>Mullally</u> decision, as compared to the Decision at issue, subsequently references <u>Smith v. Partington</u>, a Fourth Circuit case, to make clear that "the asserted class for tolling purposes consists of 'that class for which there [is] fair notice as to both the substantive claims and the <u>number and generic identities</u> of the potential plaintiffs that might participate in the judgment' if the plaintiff's class is certified."  <u>See</u> <u>Mullally</u>, 2009 WL 1453529, at *3 (quoting 352 F.3d 884, 894, 896 (4th Cir. 2003)).  This common law is not dealt with in any way by the Decision, for if it was, there would need to be a finding that Mr. Ribeiro was not part of the asserted class for tolling purposes.

To be clear, there is no question that System4, LLC was on notice that a defined subset of NECCS, Inc.'s franchisees were challenging "the foundation of the franchise system."  <u>See</u> Appl.,

Ex. 4, Decision, pg. 14.  But System4, LLC <u>was not on notice</u> that the other persons who thereafter became franchisees, and thus fell outside of the express class definition, would participate in any judgement that was rendered against it in the <u>Machado</u> lawsuit.  The legitimacy of this position is without doubt.  After all, if the defined class was truly meant to put System4, LLC on notice that all of NECCS, Inc.'s franchisees were part of the <u>Machado</u> action, then Mr. Ribeiro would have had no reason to make the plainly-false assertion in his Demand for Arbitration that his relationship with System4, LLC began in March 2011.  <u>See</u> Appl., <u>Ex. 2</u>, Demand for Arbitration ("Luis Ribeiro worked as a cleaning franchisee for System4 from approximately March 2011 until 2013"); <u>see also</u> Appl., <u>Ex. 1</u>, Unit Franchise Agreement between NECCS, Inc. and Mr. Ribeiro (d/b/a Five Star Cleaning) (August 3, 2011); <u>Ex. 14</u>, Claimant's Responses and Objections to Respondent's First Request for Admission (Feb. 1, 2016), Response 17.

Mr. Ribeiro, with the support of experienced counsel, made his clearly erroneous assertion but for one reason – because he and his counsel knew that if he did not find a way to make himself fall within the express class definition, that he would not obtain the benefit of having the statute of limitations toll for any claim that he wished to bring against System4, LLC.  There can be no other plausible explanation.

Importantly, Mr. Ribeiro and others who fell outside of the express <u>Machado</u> class definition did have ample opportunity to put System4, LLC on notice by having their counsel file a Second Amended Class Action Complaint.  In particular, after the Supreme Judicial Court's June 12, 2013 decision in <u>Machado I</u>, Mr. Ribeiro and others, through their counsel, could have properly "redefine[d] the putative class as past, present[,] and future unit franchisees."  <u>See</u> Appl., <u>Ex. 4</u>, Decision, pg. 15 (ruling, without any legal support, that such an action would have been purely "in

an abundance of caution").  The fact that Mr. Ribeiro and others did not avail themselves of this readily available option should not prejudice System4, LLC.  System4, LLC reasonably appreciated that Mr. Ribeiro's claims were out of time, and any assertion by Mr. Ribeiro or the Arbitrator to the contrary is misplaced.

Accordingly, for the Arbitrator to subject System4, LLC to any liability for an out of time claim of misclassification is plainly contrary to the facts of the case and established law.

B.  The Arbitrator "Manifestly Disregarded" Applicable Law When Addressing System4, LLC's Statute of Limitations Argument that Even if Mr. Ribeiro was a Member of the Putative *Machado* Class, Which He was Not, He Needed to File a Demand for Arbitration Against System4, LLC by June 2014

The August 23, 2016 Decision also does not do justice to System4, LLC's third statute of limitations argument – that even if Mr. Ribeiro was erroneously found to be a putative member of the Machado class, he still filed his 2015 Demand for Arbitration out of time because: (1) he was aware, on account of the Supreme Judicial Court's June 12, 2013 ruling in Machado I, that a class action could not proceed against System4, LLC; and (2) he was not a named plaintiff in the Machado action.

As previously noted, this statute of limitations argument was not subject to any written opposition on the part of Mr. Ribeiro and his counsel.  This is for good reason – because they knew that there is no legal basis to counter this defense.

To this point, the Decision correctly recognizes, within its "History of Prior Court Proceedings Between the Parties" section, the following:

> After direct appellate review, the Massachusetts Supreme Judicial Court rules in Machado I that the class action waiver was not unconscionable, excises the multiple damages waiver from the

20

> arbitration clause and <u>holds that unit franchisees had to arbitrate their claims individually against System4 and NECCS</u>.

<u>See</u> Appl., <u>Ex. 4</u>, Decision, pg. 11 (emphasis added). The Supreme Judicial Court's holding, which clearly applies equally to System4, LLC and NECCS, Inc., undoubtedly started the statute of limitations clock as to both parties. The Decision recognizes this reality with respect to NECCS, Inc. It holds as follows:

> Notably, in 2015, Ribeiro did not name NECCS in its demand for arbitration, likely concluding, and probably correctly, that claims against that entity <u>would have been time barred as of 2014</u>.

<u>See id.</u>, pg. 16 (emphasis added). Nonetheless, the Arbitrator, in the Decision, proceeds to find that the statute of limitations was adequately tolled against System4, LLC because: (1) the clock purportedly never started to run, since there was no formal denial of class certification (<u>Id.</u>, pgs. 16-17); or (2) "the statute began to run on June 12, 2013, or August 7, 2013, after rescript, but then was tolled again from December 23, 2013, when the . . . Court allowed plaintiffs to press their . . . claims against System4, until April 12, 2015 . . . ." <u>See id.</u>, pg. 17, n.6. Both conclusions are without merit and contrary to settled precedent concerning the statute of limitations.

The first conclusion is erroneous because it conflicts with the Decision's legitimate finding that the statute of limitations ran as to NECCS, Inc. More specifically, if the first conclusion is valid, then it would appear that the statute of limitations against NECCS, Inc. was also tolled until April 12, 2015. This, admittedly, is not the case and is not supported by law. The Arbitrator cites to no precedent or statutory provision, nor can she, that would explain how it could be that the statute of limitations ran against NECCS, Inc. in 2014 but not as to System4, LLC. Indeed, <u>Machado II</u> serves to fortify the Supreme Judicial Court's original determination in <u>Machado I</u> that

21

a Claimant wishing to bring a substantive claim against NECCS, Inc. and/or System4, LLC had to do so via an individual arbitration proceeding.  The Arbitrator refused to properly apply <u>Machado I</u> and <u>Machado II</u>.  Thus, her first conclusion is without merit.

The Arbitrator's second conclusion is also in error because there is no authority, either in common law or in the Massachusetts General Laws, that allows a Superior Court judge to stay a decision of the Supreme Judicial Court.  The only body that can stay such a decision is the Supreme Judicial Court itself.  After all, the highest court of the Commonwealth is the Supreme Judicial Court; no state court is above it.  It therefore cannot possibly be that a Massachusetts Superior Court has power to stay a Supreme Judicial Court decision.  Further, even if a Massachusetts Superior Court did not have such power, it would only be able to stay the matter with regard to the named plaintiffs in the action and not Mr. Ribeiro.  The Supreme Judicial Court ruled in <u>Machado I</u> that the class action waiver was unenforceable.  Thus, at a minimum, any putative class member that wished to bring a claim against System4, LLC had to do so by way of commencing a new, individual proceeding, and not by way of a class action.  The Arbitrator's second conclusion, simply put, lacks any foundation.

Accordingly, the Arbitrator "manifestly disregarded" applicable law when dealing with this statute of limitations argument.  Her invented theory of law, on which this part of the Decision entirely rests and for which she offers absolutely no support, cannot withstand scrutiny.

C.    <u>The Arbitrator "Manifestly Disregarded" Applicable Law When Addressing the Issue of Misclassification</u>

With respect to the misclassification issue, the Decision granted Mr. Ribeiro with summary judgment on prong 2 of the applicable test because System4, LLC purportedly "designed and

implemented" the franchise system in question, and that alleged fact, under <u>Depianti v. Jan-Pro</u> <u>Franchising Int'l, Inc.</u>, 465 Mass. 607 (2013) (attached hereto as <u>Ex. 15</u>), supposedly subjects System4, LLC to strict liability under the relevant statute.   <u>See</u> Appl., <u>Ex. 4</u>, Decision, pgs. 23-30. This position, as adopted by the Arbitrator, is without merit.

As a preliminary matter, the Arbitrator concedes that "if System4 is to be taken at its word that the master franchisee had sole control over the unit franchise template" (<u>Id.</u>, pg. 25), then it stands to reason that "System4 left it up to the master franchisee to classify the cleaning workers as employees if state law so required."   <u>Id.</u>   Further, and of greater importance, is the fact that not a single case cited by the Decision expressly provides that the "design and implementation" of a franchise system is a factor that warrants any consideration as part of a prong 2 analysis.   The Supreme Judicial Court had the opportunity in its 2013 <u>Depianti</u> decision to make "design and implementation" an express factor and did not do so.   Moreover, the District of Massachusetts' 2014 <u>Depianti</u> decision, which remains the law of the Commonwealth absent a reversal by the First Circuit[4] or an express ruling to the contrary from the Supreme Judicial Court, found, by the Decision's own admission, that the Supreme Judicial Court's 2013 <u>Depianti</u> decision "was limited to the conclusion that lack of a contract between a putative employer and putative employee did not preclude liability for misclassification."   <u>See</u> <u>id.</u>, pgs. 21-22 (citation omitted).

The Decision's further reliance on <u>DiFiore v. Am. Airlines, Inc.</u>, 454 Mass. 486 (2009), in order to find System4, LLC liable for misclassification, is in error.   <u>DiFiore</u> appears to have been of central importance to the Arbitrator.   The Decision reads, in pertinent part, as follows:

> The prohibition articulated by the Supreme Judicial Court against the use of an intermediate entity to misclassify service workers [found in DiFiore] compels the conclusion that the factfinder cannot limit his or her analysis by focusing exclusively on the relationship (or lack thereof) between the master franchisor and the unit franchisee, as did the [Georgia Court of Appeals] in Depianti-Georgia and the federal district court in Depianti-D.Mass, but also must scrutinize the relationship between master franchisee and unit franchisee that the master franchisor designed and implemented.  In this case, if Ribeiro is a true independent contractor in connection with its relationship with NECCS, System4 is not liable for violations of the Wage Act.  If, however, System 4 [sic] cannot rebut the presumption, under the three prong test, that Ribeiro, the service worker, is an employee of NECCS, then System4, as the architect of the entire system, is liable for misclassification because it has, by special contract (the master franchise agreement) or other means (the three-tier franchise framework) attempted to exempt itself from the Wage Act.  The question in this arbitration is whether any of the "unit franchise friendly" changes designed and implemented by System4 through its master franchisees insulate it and NECCS from liability.

See Appl., Ex. 4, Decision, pgs. 25-26.  This legal reasoning is severely misplaced.

Judge Wolf, in his 2014 Depianti decision, already had the opportunity to consider the 2009 DiFiore case, which did not in any way, shape, or form deal with misclassification.  The DiFiore case concerned wages and tips, as well as alleged tortious interference with contractual or advantageous relations.

Judge Wolf declined to follow DiFiore on account of the comprehensive analysis that must be performed in such misclassification cases.  In fact, in 2015, the Supreme Judicial Court reaffirmed the comprehensive evaluation that must take place in these cases.  In Machado II, a decision that clearly post-dates DiFiore and Depianti, the Supreme Judicial Court reaffirmed the comprehensive evaluation that must take place with regard to claims of misclassification.  See

---

[4] Depianti is currently on appeal before the First Circuit.

Ex. 1, 471 Mass. at 213-15.  The Supreme Judicial Court stressed the following directives:

- "As for assessing the merits of the plaintiffs' claim regarding misclassification, a decision maker would be compelled to, among other things, compare the rights and responsibilities assigned to the plaintiffs in the franchise agreements to the elements of employee status under the Wage Act."  Id. at 213-14.

- "[A]ny determination as to whether the plaintiffs have satisfied the statutory requirements of the Wage Act, and established their status as employees, ought to 'be based upon a comprehensive analysis of the totality of the relevant facts and circumstances of the working relationship.'"  Id. at 215 (citation omitted).

- "While '[n]o one factor is outcome-determinative,' it is fair to say that an important element of a working relationship is the contract responsible for creating it."  Id. (citation omitted).

To date, these clear directives have not been disturbed.  Thus, on account of the required comprehensive analysis, the logic of DiFiore does not apply when dealing with allegations of misclassification.

Further, for the Arbitrator to be correct in her legal reasoning, she would need to find that NECCS, Inc. was operating as System4, LLC's agent.  In its 2013 decision in Depianti, the Supreme Judicial Court explained a plaintiff's onerous burden with respect to proving agency in the franchising context:

> Th[e] [agency] test is "not easily transferable to the franchise relationship."  Franchisors, such as Jan–Pro, license their trademarks and brand identities to franchisees, such as Bradley.  Under Federal law, a franchisor is required to maintain control and supervision over a franchisee's use of its mark, or else the franchisor will be deemed to have abandoned its mark under the abandonment provisions of the Lanham Act, 15 U.S.C. § 1064(5)(A) (2006).  However, the controls that franchisors are required to maintain under the Lanham Act are not intended "to create a [F]ederal law of agency ... [or to] saddle the licensor with the responsibilities under [S]tate law of a principal for his agent."  Broadly extending the "right to control test" for vicarious liability to the franchisor-franchisee relationship, where franchisors are obligated to maintain certain controls, could have the undesirable

effect of penalizing franchisors for complying with Federal law. For this reason, the "right to control test" should be applied to the franchisor-franchisee relationship in such a way as to ensure that liability will be imposed only where the conduct at issue properly may be imputed to the franchisor.

\* \* \* \* \* \* \* \* \* \*

Today we join these courts in concluding that a franchisor is vicariously liable for the conduct of its franchisee only where the franchisor controls or has a right to control the specific policy or practice resulting in harm to the plaintiff. This test best serves the primary justification for the imposition of vicarious liability— namely, that liability should be imposed where a servant's conduct reasonably may be imputed to its master.

465 Mass. 607, 614-17 (2013) (internal citations omitted). The Arbitrator never performed this "agency" analysis. Indeed, if she had, she would have found that there was no evidence in the record that establishes that System4, LLC "controls or has the right to control the specific policy or practice" of NECCS, Inc. See id. at 617; see also Patterson v. Domino's Pizza, LLC, 60 Cal. 4th 474, 499 (2014) (finding that a franchisor was not vicariously liable where it "lacked the general control of an "employer" or "principal" over relevant day-to-day aspects of the employment and workplace behavior . . .").

There is another significant reason that the District of Massachusetts' Depianti decision should have been followed by the Arbitrator and not completely disregarded: Judge Wolf had the opportunity to consider the analysis of three prominent jurists on the Georgia Court of Appeals who also had the opportunity to rule on the matter. See Jan-Pro Franchising Int'l, Inc. v. Depianti, 712 S.E.2d 648 (Ga. Ct. App. 2012) (attached hereto as Ex. 16). Thus, four well-regarded jurists found in favor of the franchisor in Depianti, not just one.

In short, the Arbitrator's attempt to get around what is a rock-solid decision on the part of Judge Wolf in <u>Depianti</u> cannot stand.  This Court should apply <u>Depianti</u>, the only misclassification case in Massachusetts involving a three-tier franchise system, in order to find that the Arbitrator manifestly disregarded applicable law when ruling against System4, LLC.

          D.      <u>Other Instances of Manifest Disregard</u>

System4, LLC respectfully directs this Court to its earlier discussion of the Arbitrator's Memorandum of Decision on Arbitration Costs (Appl., <u>Ex. 3</u>), as well as her Order on System4 LLC's Request for Sanctions (Appl., <u>Ex. 6</u>) and Order on System4 LLC's Request for a New or Amended Order on Sanctions (Appl., <u>Ex. 8</u>), for additional instances where the Arbitrator "manifestly disregarded" applicable law, including, but not limited to, rulings from the Massachusetts Supreme Judicial Court.

<u>CONCLUSION</u>

For all of the foregoing reasons, as well as those contained in System4, LLC's Application and Motion, the Arbitrator's final arbitration award and related findings and rulings should be vacated.  That is the only way for justice to prevail.

 

Respectfully submitted,
System4, LLC
By its attorneys,

Dated: March 20, 2017               /s/ Eric H. Karp
Eric H. Karp, BBO #260280
Ari N. Stern, BBO #672442
Witmer, Karp, Warner & Ryan LLP
22 Batterymarch Street
Boston, Massachusetts 02109
(617) 423-7250
ekarp@wkwrlaw.com
astern@wkwrlaw.com

## CERTIFICATE OF SERVICE

I, Eric H. Karp, attorney for Petitioner System4, LLC, hereby certify that on this 20th day of March, 2017, I caused a copy of the foregoing *Memorandum of Law* and *Related Exhibits* to be served on the following counsel of record by hand delivery:

> Shannon Liss-Riordan, Esq.
> Jill Kahn, Esq.
> Lichten & Liss-Riordan, P.C.
> 729 Boylston Street, Suite 2000
> Boston, MA 02116

/s/ Eric H. Karp
Eric H. Karp