UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 17-10455-RWZ

SYSTEM4, LLC

v.

LUIS RIBEIRO

MEMORANDUM OF DECISION AND ORDER

August 11, 2017

ZOBEL, S.D.J.

System4, LLC ("System4") petitions the court to vacate a February 16, 2017 final arbitration award and several "related findings and rulings." Docket # 4, at 1. It further seeks attorneys' fees and costs. Respondent Luis Ribeiro moves to confirm the award. Docket # 11.

I.  **Background**

The following facts are drawn from the arbitrator's findings of fact, which this court must accept. See Mercy Hospital, Inc. v. Mass. Nurses Ass'n, 429 F.3d 338, 344 (1st Cir. 2005) ("[A]n inquiring court is bound by the arbitrator's findings of fact.") (citation omitted).

A.  **Procedural History of Putative Class Action**

This arbitration arose against the backdrop of a complicated procedural history.

In 2010, a putative class action suit[1] was filed in Norfolk Superior Court against System4 on behalf of cleaning workers who were unit franchisees and who claimed to have been misclassified as independent contractors by System4, the master franchisor, and NECCS, Inc., d/b/a System4 of Boston, LLC ("NECCS"), the master franchisee, in violation of the Massachusetts Wage Act, M.G.L. c. 149, § 148 ("Wage Act"). The case made its way to the Massachusetts Supreme Judicial Court ("SJC") twice. Central to the issues here is the SJC's later decision, which addressed System4's motion to compel plaintiffs to individual arbitration under the Franchise Agreement ("Agreement") that each plaintiff entered into with NECCS. The SJC held that System4 could compel the cleaning worker franchisees to bring their claims against System4 in individual arbitration. See Machado v. System4 LLC, 28 N.E.3d 401, 413 (Mass. 2015).

### B. Arbitration Proceedings

Accordingly, following the court's decision in 2015, respondent Luis Ribeiro, who was a putative class member of the suit, filed a demand for arbitration against System4 with the American Arbitration Association ("AAA") to challenge his employment status under the Wage Act. The AAA appointed arbitrator Jessica Block to oversee the proceedings, which concluded two years after Ribeiro filed his demand. At the outset of the arbitration, Ribeiro requested that the arbitrator make an initial determination that the proceedings should be governed by the AAA's Employment Rules rather than the AAA's Commercial Rules, and that the cost of the arbitration should be borne by System4. The arbitrator reviewed Ribeiro's request under a preliminary injunction analysis. On October 7, 2015, after receiving briefing by both parties, she issued a

---

[1] The class was never certified.

memorandum of decision and held that she would apply the AAA Employment Rules because Ribeiro was likely to succeed on the merits of his Wage Act claim, and ordered System4 to advance the cost of the arbitration proceedings. She noted, however, that because this was a preliminary ruling, she would be willing to hear additional argument from System4 "at a later stage of the proceedings," Docket # 1-3, at 12, that Ribeiro was in fact an independent contractor.

On August 23, 2016, the arbitrator issued a memorandum of decision on the parties' cross-motions for summary judgment on liability. She found that Ribeiro was not barred by the statute of limitations because he was part of the putative class and the class action tolling doctrine applied to his arbitration demand. Accordingly, she found that the statute of limitations was tolled until April 13, 2015, when the SJC ruled in Machado that System4 could compel arbitration, and Ribeiro timely filed his demand for arbitration two months later on June 12, 2015. She also ultimately found that Ribeiro should have been classified as an employee—not an independent contractor—under the Wage Act. System4 filed a motion for reconsideration of the arbitrator's decision on liability, which she denied because it failed to meet the standard for reconsideration. Subsequently, System4 filed three additional motions relating to sanctions against Ribeiro's counsel for allegedly violating the confidentiality provision of the Agreement and motion for attorneys' fees and costs. The arbitrator denied each motion and issued separate decisions that set forth her reasons. On February 16, 2017, the arbitrator issued her final decision containing the award (the "Award"), which awarded Ribeiro damages in an amount stipulated to by the parties, as well as attorneys' fees and costs.

System4 now moves under section 10 of the Federal Arbitration Act ("FAA") to vacate the Award and the six related decisions discussed above. See Docket # 5, at 6–7.

## II. Standard of Review

"[A] district court's review of arbitral awards must be 'extremely narrow and exceedingly deferential.'" Bull HN Info. Sys., Inc. v. Hutson, 229 F.3d 321, 330 (1st Cir. 2000) (quoting Wheelabrator Envirotech Operating Services Inc. v. Mass. Laborers Dist. Council Local 1144, 88 F.3d 40, 43 (1st Cir. 1996)). "We have found arbitral awards 'nearly impervious to judicial oversight' because both parties 'have contracted to have disputes settled by an arbitrator' and therefore 'it is the arbitrator's view of the facts and the meaning of the contract that they have agreed to accept.'" UMass Mem'l Med. Ctr., Inc. v. United Food and Commercial Workers Union, 527 F.3d 1, 5 (1st Cir. 2008) (quoting Teamsters Local Union No. 42 v. Supervalu, Inc., 212 F.3d 59, 61 (1st Cir. 2000); United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 37–38 (1987)). The FAA, 9 U.S.C. § 1–16, provides four specific grounds for which federal courts can vacate an arbitration award, two of which are relevant to System4's motion: (1) "where there was evident partiality or corruption in the arbitrators," 9 U.S.C. § 10(a)(2); or (2) "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." Id. at § 10(a)(4).

## III. Discussion

System4 moves the court to vacate the Award under sections 10(a)(2) and 10(a)(4) because, it alleges, there was evident partiality by the arbitrator and she

4

exceeded her powers.  "To obtain vacatur of an arbitration award, '[i]t is not enough for [a party] to show that the panel committed an error—or even a serious error.'" Raymond James Fin. Serv., Inc. v. Fenyk, 780 F.3d 59, 63 (1st Cir. 2015) (quoting Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 671 (2010)).  Rather, "[t]he challenging party has the burden to establish 'substantially more than an erroneous conclusion of law or fact.'"  Rogers v. Ausdal Fin. Partners, Inc., 168 F.Supp.3d 378, 385 (D. Mass. 2016) (quoting Local Union No. 251 v. Narragansett Imp. Co., 503 F.2d 309, 312 (1st Cir. 1974)).

### A.     Evident Partiality – 9 U.S.C. § 10(a)(2)

"Evident partiality is more than just the appearance of possible bias.  Rather, evident partiality means a situation in which 'a reasonable person would have to conclude that an arbitrator was partial to one party to an arbitration.'" JCI Communications, Inc. v. Int'l Broth. of Elec. Workers, Local 103, 324 F.3d 42, 51 (1st Cir. 2003) (quoting Nationwide Mut. Ins. Co. v. Home Ins. Co., 278 F.3d 621, 626 (6th Cir. 2002)).

As an initial matter, courts generally will not hear claims of partiality first raised after the arbitration proceedings conclude.  See Fort Hill Builders, Inc. v. Nat'l Grange Mut. Ins. Co., 866 F.2d 11, 13 (1st Cir. 1989) ("[A]bsent exceptional circumstances, we will not entertain a claim of personal bias where it could have been raised at the arbitration proceedings but was not.")  System4 did not raise any such challenge during the proceedings, nor has it identified any evidence in the record that the arbitrator failed to disclose a pre-existing bias or conflict of interest.

In any event, no reasonable person would conclude that the arbitrator was partial

5

to Ribeiro. In support of its argument, System4 asserts that: (1) the arbitrator conducted an "independent investigation," Docket # 5, at 10, by—without prompting from either parties—reviewing the previous state court procedural history, and including those procedural facts in her memorandum of decision on the parties' cross-motions for summary judgment on liability; (2) the arbitrator ruled in respondent's favor regarding System4's statute of limitations defense even though Ribeiro failed to present an opposition; and (3) the arbitrator "was not willing to perform her own independent inquiry . . . with regard to one of System4, LLC's arguments concerning Claimant's Petition for Attorneys' Fees and Costs." Id. at 12. First, System4 has failed to present any evidence supporting its contention that the arbitrator reviewed the procedural background because "she perceived it to be in the interest of Ribeiro." Docket # 5, at 10; see JCI Communications, Inc., 324 F.3d at 51 (explaining that petitioner bears the burden of establishing the arbitrator's partiality by presenting evidence of her motives). Indeed, System4 characterizes it as an "independent investigation," Docket # 5, at 10 (emphasis added), and fails to point to any facts that the arbitrator included in her decision that was in the interest of, or more favorable to, Ribeiro. Second, System4's repeated allegation that Ribeiro did not present argument in opposition to System4's statute of limitations defense is belied by the record. See Docket # 5-7, at 16–20. Moreover, System4's principal evidence in support of its argument regarding partiality is the arbitrator's unfavorable rulings against System4. But, "the fact that any [arbitrator], in exercising [her] authority, makes an unfavorable ruling does not, alone, provide evidence of bias." Rogers, 168 F.Supp.3d at 390. None of System4's claims of "evident partiality" are persuasive, and accordingly, it has failed to meet its "high burden

6

of demonstrating 'objective facts inconsistent with impartiality.'" Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust, 729 F.3d 99, 105 (2d Cir. 2013) (quoting Scandinavian Reinsurance Co. v. St. Paul Fire and Marine Ins. Co., 668 F.3d 60, 72 (2d Cir. 2012).

### B. Exceeding Power – 9 U.S.C. § 10(a)(4)

System4 also claims that the Award should be vacated under section 10(a)(4) of the FAA because the arbitrator exceeded her powers in two ways: "(1) she refused to adhere to the clear and unambiguous terms of the franchise agreement; and (2) she 'manifestly disregarded' applicable statutory and common law in each and every one of her major decisions in the case." Docket # 5, at 13. "A party seeking relief under [this] provision bears a heavy burden." Oxford Health Plans LLC v. Sutter, 133 S.Ct. 2064, 2068 (2013). "[T]he sole question for [the court] is whether the arbitrator (even arguably) interpreted the parties' contract, not whether [s]he got its meaning right or wrong." Id.

#### 1. Adherence to the Terms of the Agreement

Here, System4 argues that the arbitrator refused to adhere to the clear terms of the Agreement in three ways: (1) when she "refused to enforce the Commercial Arbitration Rules [as expressly provided for in the Agreement]." Docket # 5, at 14; (2) when she refused to enforce paragraph 19(B), the confidentiality provision, of the Agreement; and (3) when she refused to enforce paragraph 19(C), the attorneys' fees and costs provision, of the Agreement.

System4 correctly notes that the Agreement expressly states that the arbitration will be "conducted in accordance with [the AAA's] current commercial arbitration

7

rules . . . on the demand of either party." Docket # 1-1, at 21.  Under Rule 54 of the Commercial Arbitration Rules, "[a]ll other expenses of the arbitration . . . shall be borne equally by the parties . . .  unless the arbitrator in the award assesses such expenses or any part thereof against any specified party or parties."  AAA Commercial Arbitration R-54.  Instead of applying Rule 54 and ordering both parties to equally bear the expenses, the arbitrator granted Ribeiro's request to apply the AAA Employment Rules, which shifts all of the costs to the employer.  Accordingly, she ordered System4 to advance the full costs of the arbitration "as if the arbitration clause contained in the nonnegotiable franchise agreement were part of an employer-promulgated plan."  Docket # 1-3, at 10.

"If the arbitrator ignores the plainly stated procedural rules incorporated in the agreement to arbitrate while arriving at the arbitral award, that award is subject to a manifest disregard of the law challenge."  Kashner Davidson Sec. Corp. v. Mscisz, 531 F.3d 68, 77 (1st Cir. 2008) (citation omitted).  Here, however, the arbitrator did not arrive at the final Award based on her application of the AAA Employment Rules.  Instead, the Award was based on her determination of the substantive issue finding that Ribeiro was an employee, and thus, System4 had violated the Wage Act.  As the Supreme Judicial Court explained, "the Wage Act would override [the cost-splitting] provision if the plaintiffs were successful in arbitration."  Docket # 1-3, at 6 (quoting Machado, 28 N.E.3d at 414).  In other words, even had the arbitrator applied the AAA Commercial Rules at the outset, the Wage Act would override it.  Here, the arbitrator ultimately ordered System4 to bear all the costs as mandated by the Wage Act because Ribeiro was the prevailing party.  Moreover, the Agreement further provides that "[t]he

8

arbitrator will have the right to award or include in the award <u>any relief</u> which the arbitrator deems proper in the circumstances including without limitation money damages (with interest on unpaid amounts from the date due), specific performance, injunctive relief, <u>attorneys fees and costs (including the costs of arbitration)</u> . . . ." Docket # 1-1, at 21 (emphasis added). The arbitrator's decision and award is conclusive and binding. <u>Id.</u> Accordingly, even if the arbitrator erred in applying the AAA Employment Rules, that error is not of the kind that would permit this court to overturn the award. <u>See</u> <u>Advest, Inc. v. McCarthy</u>, 914 F.2d 6, 8 (1st Cir. 1990).

System4's other arguments with respect to paragraphs 19(B) and 19(C) of the Agreement are in effect substantively attacking the arbitrator's unfavorable rulings. The arbitrator, contrary to System4's contention, did not "refuse to enforce" these provisions. Docket # 5, at 15. Rather, she interpreted paragraph 19(B) of the Agreement (*i.e.*, the confidentiality provision) and rejected System4's construction, and ultimately denied its request for sanctions because she found that Ribeiro's counsel had not violated the terms of the provision. <u>See</u> <u>Wonderland Greyhound Park, Inc. v. Autotote Sys., Inc.</u>, 274 F.3d 34, 36 (1st Cir. 2001) ("It was within the province of the arbitrator to construe the contract . . . in the first instance.") (citations omitted). Similarly, the arbitrator denied System4's request for attorneys' fees under paragraph 19(C) of the Agreement because she found that its request to recover legal fees "associated with the five-year court battle should have been timely made to the Supreme Judicial Court in System4's appellate brief." Docket # 1-7, at 2. It is not for this court to decide "whether the arbitrator[] made the correct decision, or even whether the arbitrators were rational or fair. Instead, it is whether the arbitrator[] had the authority to decide as they did."

Rogers, 168 F.Supp.3d at 389 (citing Raymond James Fin. Servs., Inc., 780 F.3d at 67). It is clear that the arbitrator here analyzed the contractual provisions in order to render her decisions and did not "exceed[] [her] powers." 9 U.S.C. § 10(a)(4); see Sutter, 133 S.Ct. at 2070 ("So long as the arbitrator was 'arguably construing' the contract—which this one was—a court may not correct [her] mistakes under § 10(a)(4)." (quoting Eastern Associated Coal v. Mine Workers, 531 U.S. 57, 62 (2000)).

### 2. Manifest Disregard[2]

System4 also claims that the arbitrator exceeded her powers by acting in manifest disregard of the law when she decided the misclassification issue and addressed its statute of limitations defense. An arbitrator manifestly disregards the law "where it is clear from the record that the arbitrator recognized the applicable law—and then ignored it." McCarthy, 914 F.2d at 9. System4 bears the burden of showing that the award was: "(1) unfounded in reason and fact; (2) based on reasoning so palpably faulty that no judge, or group of judges, could ever conceivably have made such a ruling; or (3) mistakenly based on a crucial assumption that is concededly a non-fact." Ramos-Santiago v. United Parcel Serv., 524 F.3d 120, 124 (1st Cir. 200) (citation omitted).

It fails to meet its burden. Here, System4 re-argues the merits and fails to

---

[2] In Hall Street Assoc., LLC v. Mattel, Inc., 552 U.S. 576 (2008), the Supreme Court held that "§ 10 . . . provide[s] the FAA's exclusive grounds for expedited vacatur [of an arbitral award]." 552 U.S. at 584. Following Hall Street, "manifest disregard of the law is not a valid ground for vacating or modifying an arbitral award in cases brought under the [FAA]." Ramos-Santiago, 524 F.3d at 124 n.3. To the extent the standard survives, "Hall Street compels the conclusion that it does so only as a judicial gloss on § 10." Ortiz-Espinosa v. BBVA Sec. of P.R., Inc., 852 F.3d 36, 46 (1st Cir. 2017); see Hall Street, 552 U.S. at 585 ("Or, as some courts have thought, 'manifest disregard' may have been shorthand for § 10(a)(3) or § 10(a)(4)[.]"). Here, System4 appropriately advances its manifest disregard of the law argument as a "gloss" on its section 10(a)(4) argument.

identify any controlling applicable law that the arbitrator ignored. Rather, the record shows that the arbitrator carefully considered—and rejected—System4's arguments, and reasoned that Ribeiro was a putative member of the class, and thus, the class action tolling doctrine applied to him. She found that the statute of limitations for the class was tolled until April 13, 2015, when the SJC decided the specific issue of whether System4 could compel arbitration under the Agreement notwithstanding its status as a non-signatory. Further, the arbitrator analyzed the cases related to the misclassification issue and distinguished Depianti v. Jan-Pro Franchising Int'l Inc., 39 F. Supp. 3d 112 (D. Mass. 2014) ("Depianti-D.Mass"), from the facts of this case, and instead followed the reasoning of the SJC in Depianti v. Jan-Pro Franchising Int'l Inc., 990 N.E.2d 1054 (Mass. 2013) ("Depianti-SJC") in finding that System4 could be liable for employee misclassification even when no contract existed between it and Ribeiro. She explained that:

> [t]he prohibition articulated by the Supreme Judicial Court [in Depianti] against the use of an intermediate entity to misclassify service workers compels the conclusion that the factfinder cannot limit his or her analysis by focusing exclusively on the relationship (or lack thereof) between the master franchisor and the unit franchisee, as did the [Georgia Court of Appeals] in Depianti-Georgia and the federal district court in Depianti-D.Mass, but also must scrutinize the relationship between master franchisee and unit franchisee that the master franchisor designed and implemented."

Docket # 1-4, at 26. In scrutinizing the facts here, she found that System4 designed and implemented a structure that "unlawfully attempted to exempt itself from the wage statute by special contract (the master franchisee agreement) and other means (the three tier system)." Id. at 30–31. System4 argues that the arbitrator manifestly

11

disregarded the law by refusing to follow the holding in Depianti-D.Mass, which also involved a three-tier franchise system and in which the master franchisor was not found to be an employer under the Wage Act. Depianti-D.Mass, however, is not controlling law that the arbitrator was required to follow. Even assuming that it was and that the arbitrator misapplied the law, that error is not of the kind that would permit this court to overturn the Award. See McCarthy v. Citigroup Global Markets Inc., 463 F.3d 87, 95 (1st Cir. 2006) ("[O]ur precedents forbid a district court from conducting such a review [of legal error] of an arbitration award.") (citing Poland Spring Corp. v. United Food and Commercial Workers Int'l Union, AFL-CIO-CLC, Local 1445, 314 F.3d 29, 33 (1st Cir. 2002). Accordingly, this Award is supported in reason and fact, and not so "palpably faulty that no judge, or group of judges, could ever conceivably have made such a ruling." Ramos-Santiago, 524 F.3d at 124.

## IV. Conclusion

System4, LLC's Motion to Vacate Arbitration Award (Docket # 4) is DENIED. Its request for attorneys' fees and costs is also DENIED. Luis Ribeiro's Cross Motion to Confirm (Docket # 11) is ALLOWED. Judgment may be entered for respondent.

|  |  |
|---|---|
|     August 11, 2017 | /s/Rya W. Zobel |
| DATE | RYA W. ZOBEL<br>SENIOR UNITED STATES DISTRICT JUDGE |